**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**FILED**

October 06, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____**RR**_____
DEPUTY

TRACY RAPPMUND, §
*Plaintiff* §
§
§
v. § CASE NO. SA-25-CV-00934-XR
§
§
GREEN VALLEY SPECIAL UTILITY §
DISTRICT AND PHILLIP GAGE, §
*Defendants* §

**PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION AND JURY DEMAND**

**NOW COMES** Plaintiff, Tracy Rappmund, hereinafter called Plaintiff, complaining of and about Green Valley Special Utility District and Phillip Gage, hereinafter called Defendants, and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1.      Plaintiff, Tracy Rappmund, is an Individual whose mailing address is 1515 Church View Drive, St. Hedwig, Bexar County, Texas 78152.

2.      The last three numbers of Tracy Rappmund's driver's license number are 700. The last three numbers of Tracy Rappmund's social security number are 929.

3.      Defendant, Green Valley Special Utility District—a local governmental entity, within the meaning of Texas Government Code Section 554.001, and municipal subdivision, located in the state of Texas, may be served with process, by and through its Board of Directors, by serving Board President, John Frias, at P.O. Box 99, Marion, Guadalupe County, Texas 78124. Service of said Defendant as described above can be effected by certified mail, return receipt requested, or by serving its attorney, A. Boone Almanza, at 2301 S. Capital of Texas Hwy, Bldg.

H, Austin, Texas 78746.

4. Defendant, Phillip Gage, an Individual who is a resident of Wilson County, Texas, may be served with process at home at 108 Country Gardens, La Vernia, Texas 78121. Service of said Defendant as described above can be effected by certified mail, return receipt requested, or by serving its attorney, A. Boone Almanza, at 2301 S. Capital of Texas Hwy, Bldg. H, Austin, Texas 78746. Defendant, Phillip Gage, is sued in his individual capacity and, where specifically alleged, in his official capacity.

## JURISDICTION AND VENUE

5. This matter was removed from state court on July 29, 2025.

6. This Court has jurisdiction over the lawsuit because the action arises under the constitution and laws of the United States of America.

7. This court has supplemental jurisdiction of state law claims, if any, discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

8. This is an action under the Texas Whistleblower Act (TEX. GOV'T CODE §§ 554.001–.010), the Texas Commission on Human Rights Act (TEX. LAB. CODE §§ 21.001 et seq.), Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.), the Rehabilitation Act of 1973 (29 U.S.C. §§ 701 et seq.), the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621–634), the Family and Medical Leave Act of 1993 (29 U.S.C. §§ 2601 et seq.), and under 42 U.S.C. § 1983 for violations of constitutional or federal law, as more fully described hereinafter.

## CONDITIONS PRECEDENT

9. All conditions precedent to jurisdiction have occurred or been complied with.

10.     With respect to Plaintiff's Texas Whistleblower Act ("TWA") claim, Plaintiff has exhausted her administrative remedies by: (1) initiating, on August 13, 2024, action under the grievance or appeal procedures of the employing state or local governmental entity, Defendant, relating to suspension or termination of employment or adverse personnel action before suing, (2) invoking, on August 13, 2024, the applicable grievance or appeal procedures not later than the 90th day after the date (June 24, 2024) on which the alleged violation of the TWA occurred, (3) terminating on June 16, 2025, those procedures under Defendant Green Valley's applicable grievance or appeal procedures, when a final decision was not rendered before the 61st day after the date procedures were initiated, and (4) filing suit not later than the 90th day after the date on which the violation of the Texas Whistleblower Act occurred, excluding time used by Plaintiff in acting under the grievance or appeal procedures.

11.     With respect to Plaintiff's claims under the Texas Commission on Human Rights Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, and the Age Discrimination in Employment Act of 1967, Plaintiff timely jointly filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission (TWC) Commission on Human Rights, within 180 days of her termination and received a right to sue letter on that charge of discrimination on July 28, 2025.

## FACTUAL ALLEGATIONS

12.     Plaintiff is a female worker, who was born in 1967.

13.     In October of 2012, Plaintiff was hired by Defendant, Green Valley Special Utility District (the "District" or "Green Valley"), by the District's then-General Manager, Pat Allen. Mr. Allen was later replaced by Defendant, Phillip K. Gage ("Gage").

14. On June 24, 2024, Gage, acting as the District's General Manager, terminated Plaintiff's employment with the District. At the time of her termination, the District's Board of Directors had delegated its authority to the District's General Manager, Gage, to take personnel actions, including the one taken against Plaintiff. Acting under this delegation of authority, Gage terminated Plaintiff's employment.

15. At the time of her termination, Plaintiff was the District's "Human Resource Manager - Support Services." Plaintiff had held that position since approximately November 2020.

16. Further, at the time of her discharge, Plaintiff was either on—or had just returned from—Family Medical Leave Act ("FMLA") leave, for a serious health condition, was a month and a half short of her 57th birthday, and had previously reported violations of law (e.g., misappropriation of government funds, misuse of government property) and inappropriate, sexist and ageist, comments and conduct by her then-supervisor, Pat Allen, to Green Valley's Board of Directors (the "Board"), Board President John Frias, an attorney hired by the Board/District, and others.

17. On or about October 31, 2023, Plaintiff provided a written report to the Board, care of the Board's President, John Frias ("Frias"), asserting violations of law by Mr. Allen and opposing unlawful and discriminatory employment practices. Mr. Allen was at that time the District's General Manager. In her October 31, 2023 report of violations of law, Plaintiff reported that Pat Allen took District funds (junk/scrap money) of $400 and $500 to pay personal debts/bills and for personal gain, received a reimbursement of $2,348.16 from District funds but provided no receipts or documentation to support the reimbursement, purchased a tank, with District funds, to haul diesel to the plants during the winter storm, but later gave the tank to his son-in-law, kept and sold District scrap metal for his personal gain, covered up failed drug tests, and discriminated

against female workers and older workers. Plaintiff's report included detailed descriptions of instances of discriminatory comments about Plaintiff's age and sex, and retaliation that workers faced when they sought to complain about discrimination or make an EEOC charge of discrimination. Plaintiff's report further indicated that she had "endured mental and sexual misconduct from Pat [Allen]" and that if she "were to bring up issues with other female employees that he needed to address Pat [Allen] would say that I was jealous because younger and prettier" than Plaintiff. Plaintiff also alleged in that report that Mr. Allen was misusing government property for personal financial gain, by for example selling District scrap and keeping the proceeds of the sale. Plaintiff also informed the Board that Mr. Allen used the District's "company credit card" for personal expenses and cited specific instances, in which Mr. Allen took money from District funds and used it to pay his personal bills, pocketed District funds, gave District property to his son-in-law, and requested and received a reimbursement, without providing receipts or proof that he was entitled to the reimbursement.

18.    Frias, the Board's President, told Plaintiff that reporting these issues to the Board was appropriate and that they would take action to investigate and correct those issues. Frias also told Plaintiff that he would, on Plaintiff's behalf, deliver her report of violations of law to the District Attorney's office, that she was protected as a whistleblower, and that the DA's office had already given the matter a case number. Mr. Frias, acting as Plaintiff's agent or on her behalf, delivered Plaintiff's report to an appropriate law enforcement authority, the DA's office. Plaintiff reported the aforementioned violations of law to the Board and Mr. Frias because Mr. Frias directed Plaintiff to provide that information to him, told Plaintiff she would be protected if she made a report to the Board as a whistleblower, and that he would provide her report to law enforcement (for possible criminal prosecution) for her. Frias was in a position to or authorized to

receive Plaintiff's report of violations of law on behalf of the Board. Plaintiff further believed in good faith that the Board was charged with preventing government waste, misappropriation or misuse of District property or funds, and abuses of authority by Green Valley's General Manager and otherwise authorized to regulate under or enforce the laws alleged to have been violated in the report. And, Plaintiff's belief was objectively reasonable. *See infra* at ¶¶ 41-44.

19.    On or about February 15, 2024, Plaintiff learned that she required a significant surgery—a "total mastectomy." On March 5, 2024, Plaintiff, in accordance with the District's policies, submitted a Certification of Health Care Provider and all other documents required for FMLA leave. Plaintiff's doctor indicated that Plaintiff had an "[a]typical ductal hyperplasia of the left breast," was "scheduled for surgery on 4/16/2024" for a "total mastectomy," and would have planned medical treatments on April 16, 2024 and May 1, 2024. Plaintiff's doctor estimated that Plaintiff's period of incapacity would begin on April 16, 2024 and continue until May 28, 2024. Plaintiff's continuous FMLA leave was approved for April 16, 2024 to May 28, 2024.

20.    On May 20, 2024, Gage signed a contract of employment ("Employment Agreement") with Green Valley to serve as the District's General Manager. On May 23, 2024, Mr. Frias signed the Employment Agreement on behalf of the Board and/or as President of the Board. Under the Employment Agreement, "the Executive's initial term of employment . . . will be from the period beginning on June 1, 2024 (the 'Effective Date') through May 31, 2024 (the 'Initial Term')," and therein, the "period during which the Executive is employed by the District . . . is referred to as the 'Employment Term.'" The Employment Agreement further states that "During the Employment Term, the Executive will serve as the General Manager of the District reporting to the board of directors of the District (the 'Board'). In such position, the Executive will have such duties, authority, and responsibilities as will be determined from time to time by the Board

and the President of the District, which duties, authority, and responsibilities are consistent with the Executive's position." The Employment Agreement incorporates by reference and binds Gage to the Employee Handbook and policies adopted by the District.

21.     Under Green Valley policy, "Authority and responsibility are vested in the General Manager for the conduct and administration of District policies. All employees of the District are subject to the supervision of the General Manager who, in turn, is directly responsible to the Board of Directors." Further, the "General Manager or Board of Directors at its discretion may take disciplinary action including dismissal, affecting an employee at any time." In cases of dismissal, "[d]ismissal results in the complete termination of employment with the District. An individual who is dismissed shall not be eligible for rehire by the District." The policy also gives an "employee who is . . . dismissed . . . the right of appeal to the General Manager or the Board," in which case, the "General Manager will consider and investigate the circumstances of the case and report to the Board of Directors. The Directors will make a decision and notify the employee of the decision. The decision shall be final." Employees of the District are charged with directing any questions about the "Personnel Policy & Employee Manual" to the General Manager.

22.     On or about May 29, 2024, Plaintiff returned to work. However, due to complications (an infection) related to the surgery, Plaintiff required unforeseen medical intervention; she was hospitalized and ultimately required a second unplanned surgery. Plaintiff informed the District's acting General Manager, Phillip DeFrancesco, that she had been hospitalized and needed additional, emergency FMLA leave. This leave was not anticipated, foreseeable in advance, or pre-planned. On June 3, 2024, Plaintiff updated Mr. DeFrancesco that she was "still in the hospital" and could not "foresee [her] release date." Later that same day, Plaintiff notified Mr. DeFrancesco and others that she would be undergoing a second unplanned,

unexpected surgery the following day. On June 4, 2024, Plaintiff underwent surgery. Because this was an emergency situation, Plaintiff was not able to submit the FMLA leave paperwork, including the Certification of Health Care Provider until June 13, 2024.  Nonetheless, Plaintiff sought and was granted continuous FMLA leave from May 30, 2024 to June 16, 2024. Plaintiff was set to return to work on June 17, 2024. However, Plaintiff's treating medical doctor also indicated that Plaintiff would require intermittent FMLA leave for follow up visits, including one on June 25, 2024, and that upon return to work, Plaintiff would require some restrictions and limitations including: "no pushing, pulling, lifting over 10 lbs for 6 weeks, no overhead work for 6 weeks," with an "[a]nticipated date of end of restrictions" of "7/16/24."

23.    On May 30, 2024, Plaintiff submitted the forms, documents, and information required by District policy to obtain FMLA leave regarding a separate, previously planned surgery, related to the same condition. Plaintiff's physician averred that Plaintiff needed another major operation, that that surgery was scheduled for July 8, 2024, that Plaintiff would be incapacitated from July 8 to July 26, 2024, and that Plaintiff required follow up visits 1 week, 1 month, 3 months, 6 months, 9 months, and 12 months "postop." Plaintiff's doctor also indicated that due to the condition, Plaintiff would not be able to perform one or more of the essential job functions, including "no pushing, pulling, lifting over 15 lbs for 6 weeks, no overhead work for 6 weeks. Anticipated date of end of restrictions 8/19/24."

24.    On Monday, June 3, 2024, Defendant Gage assumed the duties of the District's General Manager, though Plaintiff was unaware of this fact as she had been on FMLA leave and was at that time hospitalized and on leave. As General Manager, Gage was, at all relevant times, responsible for supervising District employees and authorized to take disciplinary actions against District employees, up to and including termination of a District employee's employment with the

District. This responsibility and authority were delegated to Gage by the Board. (Under state law, the District is permitted to delegate its authority to supervise employees and take personnel actions regarding employees to the General Manager.)

25.     Between June 3, 2024 and June 7, 2024, Defendant Gage commented that he had never lost an EEOC case (on at least two separate occasions), that he was going to shake things up, and to "Get your popcorn read." Gage further acknowledged receiving and reading the whistleblower reports, i.e., the reports of violations of law, which had been made by Plaintiff and other District employees. Gage also perpetuated the hostile work environment of his predecessor, Mr. Allen. For example, Mr. Allen referred to one former employee as his Vegas girl. In one of Gage's first meetings (if not first meeting), he drew uncomfortably close to that employee, invading her personal space, and asked, "Where are you from?" He nodded knowingly when she said, "Las Vegas."

26.     On June 6, 2024, Plaintiff emailed Gage to give her an update on her medical condition and treatment, and return to work from FMLA leave. She wrote:

> Phil,
> I have been in contact with Philip [DeFrancesco, who had been serving as acting General Manager] since last week via text/email when I started feeling ill however, I wanted to give you a detailed update.
> I was in the Emergency Room on Thursday, May 30 released on Friday, May 31 with antibiotics due to an infection from my expander. By Saturday June 1 in the afternoon I was not improving. My surgeon sent me back to the Emergency Room later a having to admit me placing me on antibiotics intravenously. On Sunday, June 2 my Surgeon extracting some the infection but by Monday, June 3 it had proven it did not help. The Surgeon decided to operate on Tuesday, June 4th. I was released from the hospital with pain medicine and more antibiotics late Wednesday night. I have a follow up appointment with my Surgeon on Monday, June 10th. Hopefully she will be able to remove the drain tubes and update me on a release date to return to work. Please let me know if you have any questions.
> Thank You
> Tracy Rappmund

27.      On June 10, 2024, Plaintiff emailed Gage again, attaching a doctor's note and updating him on her medical condition and status. "Attached you will find my doctors note given me today at my follow up appointment. I am still taking pain medications and I am unable to drive this week. My Surgeon said I will be able to return on Monday, June 17." Attached to that e-mail was a "Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act" signed by her doctor. It noted details about her health condition, including Plaintiff's limitations and restrictions due to the condition, and estimated that Plaintiff would not be able to return to work until June 16, 2024, and would require accommodations and restrictions until July 16, 2024. On June 13, 2024, Plaintiff followed up with another email to Gage, to which the "Certification of Health Care Provider" was also attached.

28.      On June 14, 2024, Gage emailed Plaintiff stating "I know you are scheduled to return to work per you Dr's note you provided me earlier this week. I want to extend your leave of absence with pay though Friday, 21 June 2024 with a return-to-work date of Monday, 24 June 2024."

29.      On June 23, 2024, Gage sent Plaintiff an email again extending Plaintiff's FMLA leave for another week and stating he did "not expect to see [her] tomorrow," her prior return to work date.

30.      Plaintiff, however, did not receive that message and returned to work on June 24, 2024. Immediately upon her return, Gage terminated Plaintiff's employment with the District. In a memo to "File for record," but not given to Plaintiff, Gage wrote that "1. At approximately 8:30, Monday, June 24, 2024. I, Phillip K. Gage, terminated the employment of Tracy Rappmund with Green Valley SUD. 2. I based my decision on the results of the external investigation conducted by Attorney/ Investigator Natalie Rougeux, and on the advice of counsel, Boone Almanza,

attorney. 3. Gina Buntin and Philip Defrancesco witnessed the exchange. . . .  5. Ms. Rappmund did not make any statements during the exchange."

31.    Gage did not tell Plaintiff the basis for her termination except to say that a third-party investigation was done and that he was letting Plaintiff go. Gage did not say what the investigation was about. Plaintiff was not contacted as part of any such investigation. Nor did Gage give Plaintiff an opportunity to give her side of the story before or at the time he terminated her. Plaintiff was given no pre-termination hearing. Pre-termination investigations, if any, did not involve Plaintiff or seek her statement or information from her. Gage did not inform Plaintiff of her appeal rights, if any, or give her a chance to rebut or respond to the charges after her termination.

32.    Because Plaintiff was immediately terminated, upon her return from FMLA leave, Gage and the District did not restore Plaintiff to the position that the employee held before the leave or to an equivalent position, and having extended her leave for an additional week on June 23, 2024, Gage terminated Plaintiff, June 24, 2024, before the expiration of Plaintiff's FMLA leave. These are acts of interference with Plaintiff's FMLA rights.

33.    Plaintiff was not the only person terminated by Gage during this period. While several employees reported or complained about violations of law by Pat Allen—both male and female, older and younger workers, and employees that did and did not complain about/report to the Board sexism, ageism, and retaliation for raising concerns about the same, Gage only terminated older female workers (well over 40 years of age) that had complained about sexism, and/or ageism, and/or retaliation for raising concerns about those things.

34.    Further, Defendant Gage terminated Plaintiff within three weeks of learning of her disabling condition and immediately upon her return from leave related to that condition. Gage

knew Plaintiff's age, sex, and disabling condition. Her age and sex were listed in her personnel file, and her disabling condition was identified in her FMLA forms, which she sent to Gage. Gage knew her name and communicated with her by email about FMLA. Further, in middle of June, Plaintiff spoke to Gage by phone and told him the dates she expected to be out on leave (for the second unplanned and unexpected surgery). During that phone conversation, Gage asked Plaintiff "So, what is your deal? Why aren't you at work?" Plaintiff communicated to him information about her condition, including that she had had a double mastectomy; that she got an infection; and that she had to have a second surgery and that she was recovering from that.

35.     On August 13, 2024, Plaintiff initiated action under the District's grievance or appeal procedures relating to suspension or termination of employment or adverse personnel action. On that date, Plaintiff emailed the District a letter and complaint initiating that process and providing the basis of her whistleblower complaint, including the violations of law that she reported. Therein, Plaintiff asserted that she was terminated for reporting those violations of law, sought proceedings under the District's grievance and appeal procedures relating to termination, and requested that the matter be investigated, a report made, and a decision made by the Board of Directors, in accordance with District's applicable grievance and appeal policy.

36.     The District and its Board never responded to her whistleblower complaint and never rendered a final decision. By law, when a final decision is not rendered before the 61st day after the date the procedures were initiated, Plaintiff may terminate those procedures (anytime thereafter) and file suit, not later than the 90th day after the date on which the violation of the Texas Whistleblower Act occurred, excluding time used by Plaintiff in acting under the grievance or appeal procedures. As Plaintiff filed initiated those procedures on August 13, 2024, the 61st date after the date the procedures were initiated was October 13, 2024.

37.     On June 16, 2025, Plaintiff terminated the procedures under Defendants applicable grievance or appeal procedures. As Plaintiff was terminated on June 24, 2024 and as Plaintiff initiated the applicable grievance or appeal procedures on August 13, 2024, Plaintiff exhausted 50 days under the TWA's statute of limitations. Days used by Plaintiff in acting under the grievance or appeal procedures do not count against the TWA's 90-day statute of limitations. Therefore, Plaintiff had 40 days to file this suit. Plaintiff filed the present suit before the expiration of those 40 days and the 90-day statute of limitations.

38.     On December 5, 2024, Plaintiff filed a Charge of Discrimination (the "Charge") against Green Valley the with both the EEOC and Texas Commission on Human Rights, and it was accepted by both. Plaintiff's Charge (EEOC Charge Number 451-2025-00507) alleged that Green Valley discriminated against her on the basis of sex, age, and/or disability and/or retaliated against her for opposing unlawful (discriminatory) employment practices when it terminated her employment on June 24, 2024 or took other adverse employment actions between June 3 and June 24, 2024. By letter to Plaintiff dated February 20, 2025, the EEOC acknowledged that it had received Plaintiff's request for a Notice of Right to Sue in EEOC Charge Number 451-2025-00507, and it informed Plaintiff that her "request has been forwarded to the U.S. Department of Justice (DOJ) for action. That Agency will act on your request and issue the Notice directly to you." Plaintiff has not received anything from the DOJ, including the Notice that it was to issue directly to Plaintiff. That is, Plaintiff is waiting for the DOJ to issue a right to sue letter and will amend upon the happening of that event.

39.     On July 28, 2025, Plaintiff first received the right to sue letter from the DOJ.

## COUNT 1: VIOLATIONS OF THE TEXAS WHISTLEBLOWER ACT

40.     Plaintiff incorporates by reference the factual allegations contained in the preceding

paragraphs.

41.     Plaintiff was a public employee of Defendant, Green Valley. On October 31, 2023, Plaintiff reported violations of law by then-District General Manager, Pat Allen, to the Board, John Frias, and law enforcement by way of John Frias. Plaintiff's report alleged that Pat Allen took District funds (junk/scrap money) of $400 and $500 to pay personal debts/bills and for personal gain, respectively, received a reimbursement of $2,348.16 from District funds but provided no receipts or documentation to support the reimbursement, purchased a diesel tank, with District funds, but later gave the tank to his son-in-law, kept and sold District scrap metal for his personal gain, covered up failed drug tests by District employees, and discriminated against female workers and older workers. Plaintiff's report included detailed descriptions of instances of discriminatory comments about Plaintiff's age and sex, and retaliation that workers faced when they sought to complain about discrimination or make an EEOC charge of discrimination.

42.     Plaintiff acted in good faith in making a report of violations of law by Green Valley and Green Valley's then-General Manager, Pat Allen, to the District's Board, the Board's President, John Frias, independent investigator(s) hired by the Board/the Green Valley, and law enforcement. Plaintiff believed, in good faith, that her report to the Board, and to Board President, John Frias, in particular, was made to an appropriate law enforcement authority because Mr. Frias told her he would provide her report to Guadalupe County District Attorney's office (and also mentioned the Texas Rangers), on her behalf. Further, Plaintiff made the report to Frias at his direction and based on his assertion that he would, on her behalf, provide Plaintiff's report of violations of law to the District Attorney's office, not with the mere knowledge that Frias, the Board, and/or Green Valley had a legal obligation to transmit her report to an appropriate law enforcement authority or with the mere knowledge that her report would have to be transmitted to

an appropriate law-enforcement authority by Frias, the Board, and/or Green Valley.

43.    Further, Plaintiff believed, in good faith, that her report was made to an appropriate law enforcement authority because she made the report to the Board, which is is authorized to regulate the violations of law asserted by Plaintiff. Green Valley Special Utility District (the "District") is governed by the Board. *See* TEX. WATER CODE § 65.101. The Board is responsible for employing or contracting with a person to serve as the District's general manager and may delegate its authority to the general manager. *See* TEX. WATER CODE § 49.056. However, even when the Board delegates its authority to the general manager, it is still responsible for governing the District and for direct regulatory oversight of the general manager's exercise of those delegated powers. Plaintiff appropriately reported to the Board that Pat Allen, the District's then-general manager, was paying personal expenses out of District funds and making improper reimbursements to himself, in violation of the Water Code. *See, e.g.,* TEX. WATER CODE § 49.155 & .151. Plaintiff also reported to the Board that Pat Allenwas taking and selling junk/scrap owned by the District for personal gain, keeping District funds and using them for personal expenses and gain, misuse of and improper reimbursement from his flexible spending account without receipts, lying about the number of company vehicles, and discriminating on the basis of sex and age.

44.    The Board is responsible for and has direct regulatory oversight over the violations of law report by Plaintiff to the Board including the District's budget and spending. *See* TEX. WATER CODE § 49.057(b). The Board is further empowered to: (i) make personnel decisions, *see* (**Id.** § 49.057(a)), to (ii) ensure that "an officer or employee, who routinely collects, pays, or handles any funds of the district . . . furnish good and sufficient bond," *see* (**Id.** § 49.057(e)), to (iii) adopt bylaws to govern the affairs of the District, *see* (**Id.** at 49.057(g)), to (iv) purchase "all materials, supplies, equipment, vehicles, and machinery needed by the district to perform its

purposes," *see* (**Id.** at (h)), and to (v) obtain or require "an officer or employee of the district to obtain insurance coverage under an interlocal agreement that covers theft of district funds by officers or employees of the district in lieu of requiring a bond," *see* (**Id.** at (i)). The Board further has authority to investigate and take regulatory action, on the basis of those violations of law reported by Plaintiff, including leveling penalties, *see* TEX. WATER CODE § 49.004, taking personnel actions against the general manager, *see* (**Id.** at § 49.057(a)), auditing accounts and District funds and adopting policies related to auditing and monitoring the District's finances, *see* (**Id.** at §§ 49.199, .191, & .193), approving and averring to the District's audits or financial reports, *see* (**Id.** at §§ 49.194), and requiring that the general manager furnish a bond or obtain insurance that covers theft by the general manager, *see* (**Id.** at §§ 49.057(e) & (i)).

45.     Defendant, Gage, Green Valley's General Manager, acknowledged reading Plaintiff's report of violations of law. He did so, without provocation or good reason, and in the context of stating that he was going to shake things up, that he had never lost an EEOC case, and that the employees need to get their popcorn ready.

46.     Green Valley, the employing governmental entity to an adverse employment action against Plaintiff because of the aforementioned report(s) of violations of law. The Board delegated and authorized Defendant Gage, the District's General Manager, to take personnel actions, including dismissal or termination of a District employee's employment with the District. Defendant Gage, acting as the District's General Manager and on behalf of the District and pursuant to the authority delegated to him by the Board, terminated Plaintiff's employment on June 24, 2024.

47.     Defendant Gage did not take adverse personnel actions against District employees who had *not* made reports of violations of law by the District's former General Manager, Pat Allen.

Defendant Gage terminated Plaintiff and at least one other District employee that had made reports of violations of law by the District's former General Manager, Pat Allen, and retaliated against other District employees that had made reports of violations of law by the District's former General Manager, Pat Allen, by taking lesser adverse employment and/or negative personnel actions against those employees. Defendant Gage did so in his capacity as the District's General Manager and acting for the District and pursuant to the authority delegated to him by the Board. Defendants, Gage and Green Valley, treated other similarly situated employees who had not engaged in the protected activity more favorably than those who had not.

### COUNT 2: VIOLATIONS OF THE FMLA AND 42 U.S.C. § 1983 (INTERFERENCE)

48.     Plaintiff brings claims under the Family and Medical Leave Act ("FMLA") of 1993 (29 U.S.C. §§ 2601 et seq.) and under 42 U.S.C. § 1983 for violations of the FMLA. Plaintiff incorporates by reference the factual allegations contained in this pleading as if repeated verbatim in this Count.

49.     Plaintiff was eligible to take FMLA leave, when her leave began, because she had been employed by the District for at least 12 months and had worked at least 1,250 hours during the previous 12-month period. Plaintiff was entitled to take up to 12 weeks of leave because of a "serious health condition" that made Plaintiff unable to perform the functions of her position. Plaintiff had a physical condition and impairment that involved inpatient care in a hospital and required continuing treatment by a health care provider, her medical doctor(s).

50.     Plaintiff's doctor (Gynecologist) diagnosed her with atypical ductal hyperplasia, i.e., abnormal cell growth in the milk ducts of the breasts, and noted the risk of this abnormal cell growth turning into breast cancer, especially in light of Plaintiff's family history of breast cancer— two of Plaintiff's sisters had breast cancer; one of her sisters and a grandmother died from breast

cancer; and Plaintiff's other sister's breast cancer turned into metastatic breast cancer and spread all over her body. Plaintiff's doctor recommended a double mastectomy to remove her breasts.

51.     Plaintiff gave the District adequate prior notice of her need for FMLA leave, applying for FMLA leave on March 5, 2024, to begin April 16, 2024. Plaintiff complied with the District's relevant FMLA policies. Defendant Green Valey granted her FMLA leave.

52.     Plaintiff was entitled to continue her benefits of employment during the leave period and, upon return from leave, to be restored to the position that she held before the leave or to an equivalent position. On June 23, 2024, Defendant extended Plaintiff's FMLA leave by one week to July 1, 2024. On June 24, 2024, Plaintiff was terminated and her benefits of employment discontinued, during the leave period. Further, upon return from leave, Plaintiff was not restored to the position that she held before the leave or to an equivalent position but instead immediately discharged by Defendants. Thus, Defendants interfered with her FMLA rights.

53.     Plaintiff was replaced by the Financial Controller, Jenna Buntin, who is significantly younger than Plaintiff, had just begun working for Green Valley, and had not requested or taken FMLA leave or asserted other FMLA rights. Plaintiff's job duties may have also been reassigned, in part, to two other Green Valley employees that are outside of the protected class: Ashlyn Ford and Katie Durham. Ashlyn Ford and Katie Durham never requested FMLA leave or asserted FMLA rights.

## COUNT 3: VIOLATIONS OF THE FMLA AND 42 U.S.C. § 1983 (RETALIATION)

54.     Plaintiff brings claims under the Family and Medical Leave Act ("FMLA") of 1993 (29 U.S.C. §§ 2601 et seq.) and under 42 U.S.C. § 1983 for violations of the FMLA. Plaintiff incorporates by reference the factual allegations contained in this pleading as if repeated verbatim in this Count. Plaintiff incorporates by reference the factual allegations contained in Count 2 of

this pleading.

55.     Plaintiff was protected under the FMLA. Plaintiff sought and was granted leave. On the day that Plaintiff returned to work from FMLA leave (June 24, 2024), Plaintiff was terminated by Defendants.

56.     Defendants made the adverse employment decision because Plaintiff sought protection under the FMLA. Defendant Gage asked Plaintiff, in one of their first conversations, if not their first conversation, with respect to her FMLA, "So, what is your deal? Why aren't you at work?" Further, Plaintiff was replaced by the Financial Controller, Jenna Buntin, who is significantly younger than Plaintiff, had just begun working for Green Valley, and had not requested or taken FMLA leave or asserted other FMLA rights. Plaintiff's job duties may have also been reassigned, in part, to two other Green Valley employees that were outside of the protected class: Ashlyn Ford and Katie Durham. Ashlyn Ford and Katie Durham never requested FMLA leave or asserted FMLA rights. That is, Defendants treated Plaintiff less favorably than other similarly situated employees outside of the protected class.

57.     Defendant Green Valley had notice of a pattern of prior violations which involved events similar to what transpired when Plaintiff's rights were violated. As noted above, multiple employees complained to Green Valley's Board about discrimination and retaliation by the District's former General Manager, Mr. Allen. Previously, at least one other employee filed an EEOC charge of discrimination. Plaintiff reported to Green Valley's Board, in her October 31, 2024 report, that Mr. Allen had retaliated against and been hostile toward District employees that had asserted their federal employment rights. The Board, knowing of this persistent pattern of discriminatory and retaliatory conduct that violated—or threatened to violate—federal rights, took no or inadequate action to prevent future violations of those rights. Defendant Gage made

statements in the workplace about shaking things up, and in that context, that he had never lost an EEOC case and that the employees should get their popcorn ready. Complaints were made to the Green Valley and its Board about Gage's retaliatory conduct. Yet, the Board continued to delegate its authority on dismissals or terminations of employment and other personnel actions to the General Manager, not even requiring their prior or after-the-fact approval.

58.     Further, the Board did not adequately train Defendant Gage to ensure that such violations did not occur under his administration. Mr. Gage's conduct and comments evidence this utter lack of adequate training. Mr. Gage's conduct and statements included discussing the confidential complaints of District employees, indicating that he was going to shake things up, that he had never lost an EEOC case, and that the employees should get their popcorn ready, and engaging in behaviors that made female workers uncomfortable. Defendant Green Valley's policy or procedures were inadequate. The prior history shows Defendant Green Valley was deliberately indifferent in adopting its training policy. Further, the inadequate training policy caused the injury, i.e., resulted in other instances of the same or similar violations of federal rights, including Plaintiff's termination in violation of her federal rights. Had Mr. Gage been properly trained he would not have retaliated against Plaintiff.

## COUNT 4: VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (SEX DISCRIMINATION)

59.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs. Plaintiff brings this claim under federal law, Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et seq.*) and 42 U.S.C. § 1983 for violations of rights secured by the federal constitution and laws.

60.     Plaintiff is a member of a protected class. Plaintiff is a female.

61.     Plaintiff was qualified for the position, at the time of her termination. Defendants

did not terminate Plaintiff based on her qualifications and have never asserted that she was not qualified. Plaintiff had worked in the position that he held at discharge continuously since approximately November 2020, without any concerns about his qualifications. Moreover, Plaintiff was able to perform her essential job duties with or without accommodation. In fact, Plaintiff's doctor cleared her to return to work on June 17, 2024.

62.     Plaintiff was terminated from her position. On June 24, 2024, Defendant Gage, acting as the District's General Manager and on behalf of the District, and pursuant to the authority delegated to him by the Board, terminated Plaintiff's employment with the District. Thus, Defendants, Gage and Green Valley, terminated Plaintiff's position of employment with the District.

63.     Plaintiff was replaced by someone outside of the protected class. Plaintiff was replaced by the Financial Controller, Jenna Buntin, who is significantly younger than Plaintiff, had just begun working for Green Valley, had not requested or taken FMLA leave or asserted other FMLA rights, and had not complained about discrimination at Green Valley or opposed discrimination at Green Valley. Plaintiff's job duties may have also been reassigned to two other Green Valley employees that are outside of the protected class: Ashlyn Ford and Kadie Durham. Ashlyn Ford, who is 20 to 30 years younger that Plaintiff, never requested FMLA leave or asserted FMLA rights and never complained about or opposed discrimination at Green Valley. Kadie Durham, who is under 40 years old, never requested FMLA leave or asserted FMLA rights and never complained about or opposed discrimination at Green Valley.

64.     Other similarly situated employees were treated more favorably than Plaintiff. The only two employees fired by Green Valley and Gage were both female employees of the District. Male employees, even those who had made reports of violations of law, were not terminated by

Green Valley and Gage. Plaintiff would not have been terminated from her position of employment with the District in the absence of, or but for, her sex (female), and/or Plaintiff's sex (female) was a motivating factor in Defendants' decision to terminate Plaintiff's employment with District.

65.     Defendant, Gage, may be held individually liable, as an agent of a covered employee, in his official capacity. Green Valley delegated its traditional rights, such as hiring and firing, to Defendant, Gage, and Defendant Gage participated in the decision make process that forms the basis of the discrimination. Green Valley's Board delegated such personnel decision to Defendant Gage, as the District's General Manager, and made him responsible for the terms and conditions of Plaintiff's employment with, and/or for Plaintiff's work assignment in, the District.

## COUNT 5: VIOLATIONS OF TEXAS COMMISSION ON HUMAN RIGHTS ACT
### (SEX DISCRIMINATION)

66.     Plaintiff incorporates by reference the factual allegations contained herein, including those made in Count 4, as if repeated verbatim in this Count.  Plaintiff brings this claim under the Texas Commission on Human Rights Act (TEX. LAB. CODE §§ 21.001 et seq.) on the basis of the allegations made in this pleading, including Count 4.

## COUNT 6: VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (RETALIATION)

67.     Plaintiff incorporates by reference the factual allegations contained herein, as if repeated verbatim in this Count. Plaintiff brings this claim under federal law, Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et seq.*), and 42 U.S.C. § 1983 for violations of rights secured by the federal constitution and laws.

68.     Plaintiff engaged in an activity protected by Title VII. Plaintiff opposed a practice that violates Title VII and/or had an objectively reasonable belief that the District and its then-General Manager, Pat Allen, engaged in conduct that is proscribed by Title VII. In her report of October 31, 2024 and on other occasions verbally, Plaintiff reported to Green Valley's Board,

Board President, John Frias, and others sex discrimination by the District's then-General Manager, Pat Allen. Plaintiff honestly believed that Mr. Allen's conduct, which she reported, discriminated against her on the basis of sex. The District's Board had delegated is authority to hire, fire, and take personnel actions against District employees to the District's then-General Manager, Pat Allen. Plaintiff also reported that Mr. Allen and the District retaliated against those employees that opposed discrimination and/or sought to file a charge with the EEOC.

69.    Defendants took action against Plaintiff that a reasonable employee would consider to be materially adverse. Plaintiff was terminated from her position. On June 24, 2024, Defendant Gage, acting as the District's General Manager and on behalf of the District, and pursuant to the authority delegated to him by the Board, terminated Plaintiff's employment with the District. Thus, Defendants, Gage and Green Valley, terminated Plaintiff's position of employment with the District, taking a materially adverse employment action against her.

70.    Plaintiff's opposition to workplace discrimination was a motivating factor in Defendants' decision to take adverse employment actions against Plaintiff. Other employees that reported violations of law by Pat Allen, but not workplace discrimination, were not fired. The only two employees that were terminated by Gage and Green Valley were female workers that had complained about sex discrimination in the workplace.

71.    Plaintiff was replaced by the Financial Controller, Jenna Buntin, who is significantly younger than Plaintiff, had just begun working for Green Valley, had not requested or taken FMLA leave or asserted other FMLA rights, and had not complained about discrimination at Green Valley or opposed discrimination at Green Valley. Plaintiff's job duties may have also been reassigned to two other Green Valley employees that are outside of the protected class: Ashlyn Ford and Katie Durham. Ashlyn Ford never complained about or opposed workplace

discrimination at Green Valley or practices at Green Valley believed to violate Title VII. Likewise, Katie Durham never complained about or opposed workplace discrimination at Green Valley or discriminatory workplace practices at Green Valley.

72.    A causal connection exists between the protected activity and the adverse employment action. Other similarly situated employees were treated more favorably than Plaintiff. The only two employees fired by Defendants, Green Valley and Gage, at or around this time, were employees of the District that had opposed sex discrimination by making written and verbal complaints of sex discrimination by the District's then-General Manager, Pat Allen. Employees, even those who had made reports of violations of other laws, but not complained of sex discrimination, were not terminated by Defendants, Green Valley and Gage. Plaintiff would not have been terminated from her position of employment with the District in the absence of, or but for, her opposition to sex discrimination in the workplace.

73.    Defendant, Gage, may be held individually liable, as an agent of a covered employee, in his official capacity. Green Valley delegated its traditional rights, such as hiring and firing, to Defendant, Gage, and Defendant Gage participated in the decision make process that forms the basis of the discrimination. Green Valley's Board delegated such personnel decision to Defendant Gage, as the District's General Manager, and made him responsible for the terms and conditions of Plaintiff's employment with, and/or for Plaintiff's work assignment in, the District.

## COUNT 7: VIOLATIONS OF TEXAS COMMISSION ON HUMAN RIGHTS ACT (RETALIATION)

74.    Plaintiff incorporates by reference the factual allegations contained in this pleading, including those made in Count 6, as if repeated verbatim in this Count.  Plaintiff brings this claim under the Texas Commission on Human Rights Act (TEX. LAB. CODE §§ 21.001 et seq.) on the basis of the allegations made in this pleading, including Count 6.

**COUNT 8: VIOLATIONS OF THE AGE DISCRIMINATION IN
EMPLOYMENT ACT OF 1967
(AGE DISCRIMINATION)**

75.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs and counts, as if repeated verbatim herein. This Count alleges violations of the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621–634) and 42 U.S.C. § 1983 for violations of rights secured by the federal constitution and laws.

76.     It is unlawful for an employer to discharge an employee or take other adverse employment actions against an employee on account of that employee's older age.

77.     Defendants, as used in this Count, refer only to Plaintiff's "employer," as that term is used and defined under the ADEA and TCHRA.

78.     On June 24, 2024, Defendants discharged Plaintiff from her position of employment with Green Valley.

79.     Plaintiff was over 40 years or older at the time of her termination. She was 56 years old at the time of her discharge.

80.     Plaintiff was qualified for her position of employment, at the time of her termination. Defendants did not terminate Plaintiff based on her qualifications and have never asserted that she was not qualified. Plaintiff had worked in the position that he held at discharge continuously since approximately November 2020, without any concerns about his qualifications. Moreover, Plaintiff was able to perform her essential job duties with or without accommodations. In fact, Plaintiff's doctor cleared her to return to work on June 17, 2024.

81.     Defendants would not have terminated Plaintiff but for her age. Defendants only terminated two District employees at or around the time of Plaintiff's termination. Both were older workers, over 40 years old. Plaintiff was replaced by a significantly younger employee(s). Plaintiff was replaced by the Financial Controller, Jenna Buntin, who is significantly younger than Plaintiff

and had just begun working for Green Valley. Plaintiff's job duties may have also been reassigned, in part, to two other Green Valley employees that were outside of the protected class: Ashlyn Ford and Katie Durham. Ashlyn Ford is under 40 years of age, i.e., 20 to 30 years younger than Plaintiff. Likewise, Katie Durham was also less than 40 years old and significantly younger than Plaintiff.

**COUNT 9: VIOLATIONS OF TEXAS COMMISSION ON HUMAN RIGHTS ACT
(AGE DISCRIMINATION)**

82.     Plaintiff incorporates by reference the factual allegations contained in this pleading, including those made in Count 8, as if repeated verbatim herein. Plaintiff brings this claim under the Texas Commission on Human Rights Act (TEX. LAB. CODE §§ 21.001 et seq.) on the basis of the allegations made in these pleadings, including Count 8.

**COUNT 10: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, THE
REHABILITATION ACT, AND THE TCHRA
(DISABILITY DISCRIMINATION)**

83.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs and counts, as if repeated verbatim herein. This Count alleges violations of the TCHRA (TEX. LABOR CODE § 21.051 et seq.), the Americans with Disabilities Act ("ADA") of 1990 (42 U.S.C. §§ 12101 et seq.), the Rehabilitation Act ("RA") of 1973 (29 U.S.C. §§ 701 et seq.), and 42 U.S.C. § 1983 for violations of rights secured by the federal constitution and laws.

84.     It is unlawful for an employer to discharge—or take other adverse employment actions against—an employee on account of that employee's disability.

85.     Defendants, as used in this Count, refer only to Plaintiff's "employer," as that term is used and defined under the ADA, the RA, and the TCHRA.

86.     Plaintiff was qualified for the position she held at the time of discharge. Defendants did not terminate Plaintiff based on her qualifications and have never asserted that she was not qualified, in terms of education, training, or experience, or unable to perform her essential job

duties. Plaintiff had worked in the position that she held at discharge continuously since, approximately, November 2020, without any concerns about her qualifications. Moreover, Plaintiff was able to perform her essential job duties with or without accommodation. In fact, Plaintiff's doctor cleared her to return work on June 17, 2024, with restrictions. Those restrictions, which sought accommodations, were not objected to by Defendants.

87.     Plaintiff had a disability, a record of disability, or was perceived as having a disability. Plaintiff was diagnosed with atypical ductal hyperplasia of the breast, i.e., abnormal cell growth in the milk ducts of the breast. This diagnosis made the risk of breast cancer so great that Plaintiff's doctors recommended a double mastectomy. Plaintiff's condition limits major bodily functions, including normal cell growth, and though episodic or in remission, when active, substantially limits major life activities (totally incapacitating her for a time) and is indeed, life threatening, as it can turn into breast cancer. The condition led to her hospitalization and multiple surgeries.

88.     Plaintiff was replaced by the Financial Controller, Jenna Buntin, a non-disabled employee, who had just begun working for Green Valley. Plaintiff's job duties may have also been reassigned, in part, to two other Green Valley employees that were/are outside of the protected class: Ashlyn Ford and Katie Durham. Neither Ashlyn Ford nor Katie Durham are disabled.

**INJUNCTION**

89.     Plaintiff seeks that the court enjoin Defendants from engaging in unlawful employment practices, rehire Plaintiff, and reinstate Plaintiff to the position and pay grade which Plaintiff held but for the unlawful employment actions of Defendants. Plaintiff seeks that this injunction be back dated to the time of her termination and require her reinstatement effective as of that date, including all the compensation and benefits of employment to which she is entitled

from the date of her termination.

## DAMAGES

90.     Plaintiff has sustained damages in excess of this Court's jurisdictional minimum, as a result of the actions and/or omissions of Defendant described hereinabove, including, but not limited to:

Backpay;

Interest on backpay;

Frontpay;

Loss of benefits or privileges of employment, including loss of Social Security benefits, pension and retirement benefits, and medical benefits.

Expert fees;

Court costs;

Mental anguish in the past;

Mental anguish in the future;

Emotional pain;

Prejudgment interest; and

Postjudgment interest.

## ATTORNEY FEES

91.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of the United States, as the Court deems equitable and just, as provided by the Texas Civil Practice and Remedies Code and the Laws of the United States of America.

### EXEMPLARY, PUNITIVE, AND LIQUIDATED DAMAGES

92.    Plaintiff seeks liquidated damages, under the FMLA, as Defendants did not act in good faith and did not have reasonable grounds for believing they were not violating law. Plaintiff seeks exemplary and/or punitive damages against Defendants, to the extent permitted by law. Defendants' conduct was an intentional violation of federally and state-protected rights, and/or was done with malice or with reckless indifference to Plaintiff's federally protected (and state-protected) rights. Plaintiff is entitled to an award of liquidated (and/or punitive or exemplary) damages within the meaning of the ADEA, the FLSA, the FMLA, the ADA, the RA, the TCHRA, and 42 U.S.C. §§ 1983 & 1981a, to the extent permitted by law.

### JURY DEMAND

93.    Plaintiff demands a jury trial and tender the appropriate fee with this petition.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Tracy Rappmund, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and postjudgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled, and all other relief the Court deems appropriate.

Respectfully submitted,

THE GILBREATH LAW FIRM, PLLC

By:    ___/s/ Jeremy Gilbreath_____
Jeremy Gilbreath
State Bar No. 24069783
jeremy@gilbreathfirm.com

13000 Old Blanco Rd., Suite 304
San Antonio, Texas 78216
TEL NO.: (210) 479-3195
Attorney for Plaintiff
Tracy Rappmund

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that at 4:10 p.m. (CST) on October 6, 2025 a true and correct copy of Plaintiff's Second Amended Original Petition and Jury Demand was served on Defendants, as an Exhibit to Plaintiff's Motion for Leave to File Amended Petition, through their attorney, A. "Boone" Almanza, electronically via email at <u>balmanza@abdmlaw.com</u> and/or the Court's CM/ECF system, and the electronic transmission was reported as complete.

*/s/  Jeremy Gilbreath*
Jeremy Gilbreath
E-mail:  jeremy@gilbreathfirm.com