**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TRACY RAPPMUND,<br>*Plaintiff* | §<br>§<br>§<br>§ | |
| v. | §<br>§<br>§ | CASE NO. SA-25-CV-00934-XR |
| GREEN VALLEY SPECIAL UTILITY<br>DISTRICT AND PHILLIP GAGE,<br>*Defendants* | §<br>§<br>§<br>§ | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**
**MOTION TO DISMISS**

NOW COMES Plaintiff, Tracy Rappmund, by and through undersigned counsel, and files this Plaintiff's Response to Defendants' Rules of Civil Procedure 12(b)(1) and 12(b)(6) Motion to Dismiss, and respectfully prays that Defendants' Motion be denied, or alternatively that Plaintiff be given leave to amend if the Court finds it necessary.

## I.      INTRODUCTION

Defendant, Phillip Gage, ("Gage") seeks dismissal of Plaintiff's Title VII, TCHRA, ADEA, ADA, and RA claims because he is not an employer and as those laws to not provide relief against supervisory personnel in their individual capacities. *See* (Dkt. 16 at ¶¶ 6–8). However, Plaintiff's pleadings do not seek liability against Gage as to those claims (Counts 4–10), or to the extent they do, Plaintiff acknowledges that her Title VII, TCHRA, ADA, and RA claims properly lie against her former employer. *See* (Dkt. 15 at ¶¶ 77, 85) ("Defendants, as used in [Counts 8–10], refer only to Plaintiff's 'employer,' as that term is used and defined under the ADEA and TCHRA," the ADA and the RA.).

1

Plaintiff's only individual capacity claims against Gage were under Counts 2 and 3 under the FMLA and Section 1983. As those claims are well-pled and as Gage is not entitled to qualified immunity, Plaintiff disagrees with dismissal of those claims, as explained hereinafter.

TABLE 1: CLAIMS BROUGHT AGAINST GAGE, IN HIS INDIVIDUAL CAPACITY

| COUNT(S). CLAIM | MADE AGAINST GAGE? |
|---|---|
| Count 1. TWA Violation(s) | No. |
| Count 2. FMLA Interference (§ 1983) | Yes. |
| Count 3. FMLA Retaliation (§ 1983) | Yes. |
| Count 4. Title VII—Sex Discrimination | No. |
| Count 5. TCHRA—Sex Discrimination | No. |
| Count 6. Title VII—Retaliation | No. |
| Count 7. TCHRA—Retaliation | No. |
| Count 8. ADEA—Age Discrimination | No. |
| Count 9. TCHRA— Age Discrimination | No. |
| Count 10. ADA, RA, TCHRA—Disability Discrimination | No. |

Defendants further seek dismissal of official capacity claims against Gage. *See* (Dkt. 16 at ¶ 15) ("To the extent Plaintiff contends she has sued Gage in his official capacity as to every cause of action asserted, Gage must still be dismissed from suit because GVSUD is already named as a defendant, and any claims against Gage in his official capacity would be duplicative."). However, Plaintiff did not make official capacity claims against Gage under the Texas Whistleblower Act ("TWA") (Count 1), the FMLA or Section 1983 (Counts 2 & 3), the TCHRA (Counts 5, 7, 9, & 10), the ADEA (Count 8), or the ADA and RA (Count 10). Plaintiff only pled official capacity claims against Gage under her Title VII claims in Counts 4 & 6—for sex discrimination and retaliation, respectively. *See* (Dkt. 15 at ¶¶ 65 & 73); *see also* (**Id.** at ¶ 4) ("Defendant, Phillip Gage, is sued in his individual capacity and, where specifically alleged, in his official capacity."). However, that was in error, as official capacity claims against Gage, under Counts 4 and 6 are duplicitous with GVSUD.

Finally, Defendants seek dismissal of Plaintiff's Texas Whistleblower Act (TWA) claim (Count 1) as: (1) untimely, *see* (Dkt. 16 at ¶¶ 16–21), and (2) as not plausibly pleading that she

2

made her report to an "appropriate law enforcement authority," *see* (**Id.** at ¶¶ 22–26). Plaintiff disagrees with both of those grounds for dismissal, as explained hereinafter.

## II.    STANDARD OF REVIEW

A 12(b)(6) motion to dismiss should be denied when plaintiff pled "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U. S. 544, 555–56 (2007). Plaintiff's well-pled facts must be taken as true and viewed in the light most favorable to plaintiff. *See Walker v. Beaumont ISD*, 938 F.3d 724, 735 (5th Cir. 2019) ("All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor"). Further, a complaint may proceed even if "a recovery is very remote and unlikely." *See* (**Id**) (quoting *Twombly*, 550 U.S. at 556). Rule 12(b)(1) permits dismissal of a claim, over which the court does not have jurisdiction; however, dismissal is not warranted if the court's jurisdiction is well-pled. *See Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001) ("a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim that would entitle plaintiff to relief.").

## III.    BACKGROUND

Plaintiff sued Defendants "under the Texas Whistleblower Act (TEX. GOV'T CODE §§ 554.001–.010), the Texas Commission on Human Rights Act (TEX. LAB. CODE §§ 21.001 et seq.), Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.), the Rehabilitation Act of 1973 (29 U.S.C. §§ 701 et seq.), the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621–634), the Family and Medical Leave Act of 1993 (29 U.S.C. §§ 2601 et seq.), and under 42 U.S.C. § 1983 for violations of constitutional or federal law, as more fully described," in PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION & JURY DEMAND. *See* (Dkt. 15).

3

On October 21, 2025, Defendants filed a Motion to Dismiss asking that the Court dismiss: (1) Plaintiff's claims against Gage in Counts 2–10 "because he is not liable in the capacity in which he has been sued"; (2) "Plaintiff's state law claims against Gage individually" as "barred by the doctrine of official immunity"; (3) "Plaintiff's federal 1983 claims [against Gage]" as "barred by qualified immunity"; (4) "Plaintiff's . . . Texas Whistleblower [claim]" in Count 1 as (i) "Plaintiff did not meet the applicable statute of limitations" and (ii) "failed to make her report of violations of law to an appropriate law enforcement authority." *See* (Dkt. 16 at ¶ 2).

## IV.  ARGUMENTS AND AUTHORITIES

### A.  Defendants' Rule 12(b)(6) Motion to Dismiss

### 1.  Plaintiff's FMLA claims against Gage, in his individual capacity, are well-pled.

Gage asserts that individual-capacity claims cannot be made "against him for violations of Title VII (Counts 4 and 6), Section 1983 (Counts 2 and 3), TCHRA (Counts 5, 7, 9, and 10), ADEA (Count 8), and the ADA and RA (Count 10)." *See* (Dkt. 16 at ¶ 3). However, Plaintiff does not seek individual-capacity damages from Gage under Title VII, the TCHRA, the ADEA, the ADA, or the RA. Plaintiff meant only to make such a claim under the FMLA and Section 1983. *See* (Dkt. 15 at ¶ 77) ("Defendants, as used in [Counts 8 & 9], refer only to Plaintiff's 'employer,' as that term is used and defined under the ADEA and TCHRA."); (**Id.** at ¶ 85) ("Defendants, as used in [Count 10], refer only to Plaintiff's 'employer,' as that term is used and defined under the ADA, RA, and the TCHRA.").

With respect to Plaintiff's FMLA claim, Gage argues "Plaintiff has not alleged any facts that could give rise to a cause of action for FMLA violations against Gage in his individual capacity." *See* (Dkt. 16 at ¶9) ("Instead, Plaintiff alleges that Gage was acting within his authority properly delegated to him by GVSUD and does not allege any *ultra vires* acts."). However, the Fifth Circuit permits individual liability against public employees like Gage who act "directly or

indirectly, in the interest of" the employer. *See Modica v. Taylor*, 465 F.3d 174, 186–88 (5th Cir. 2006). Plaintiff alleges Gage was acting in the interest of the employer, GVSUD.  Gage had and exercised delegated authority to terminate her employment—quintessential employer conduct. *See* (Dkt. 15 ¶¶ 14, 21, 24, 30–34, 46, 52, 55–56.). Moreover, after *Modica*, Plaintiff's allegations, if true, establish a violation of a clearly established right. Gage's potential individual liability was clearly established at the time acted directly or indirectly in the interest of the employer. Whether that conduct was objectively reasonable is ill-suited for decision on the pleadings.

However, it is inaccurate to say, "Plaintiff has not alleged any facts that could give rise to a cause of action for FMLA violations against Gage in his individual capacity." Plaintiff's FMLA interference and retaliation claims are plausibly alleged against Gage. With respect to her interference claim, Plaintiff pled that: (1) *Gage* extended leave and then fired Plaintiff during the extension/return period, and (2) *Gage* failed to restore her to her prior position or an equivalent one. *See* (Dkt. 15 at ¶ 52). Moreover, Plaintiff's complaint goes beyond mere conclusory allegations. She points to specific dates, communications, and delegations of authority. *See* (Dkt. 15 ¶¶ 14, 26–30, 32, 46–47). With respect to her retaliation claim against Gage, Plaintiff alleges (1) temporal proximity (i.e., that she was terminated the day she returned from FMLA leave), that (2) Gage had knowledge of her protected leave, (3) that Gage made comments that plausibly allege a retaliatory motive, and (4) that similarly situated employees outside of the protected class (who had not taken FMLA leave) were treated more favorably. *See* (Dkt. 15 ¶¶ 26–34, 52–56).

### 2.  Plaintiff makes no claims against Gage in his official capacity.

Gage next asserts that a suit in his official capacity is merely a suit against GVSUD, his government employer, and thus "any claims against Gage in his official capacity would be duplicative." *See* (Dkt. 16 at ¶ 15) (citing *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000)). Defendants likewise argue "Section 1983 actions against

5

individuals in their official capacities are not sustainable" for the same reason. (Dkt. 16 at ¶ 5) ("the identity of the individual is subsumed in the government entity's identity.").

However, Plaintiff does not seek to assert claims under § 1983 against Gage, in his official capacity. Plaintiff only pled official capacity claims against Gage under her Title VII claims in Counts 4 & 6—for sex discrimination and retaliation, respectively. *See* (Dkt. 15 at ¶¶ 65 & 73); *see also* (**Id.** at ¶ 4) ("Defendant, Phillip Gage, is sued in his individual capacity and, where specifically alleged, in his official capacity."). But, as noted at the outset, that was an error.

### 3.  The Texas Whistleblower Act claim (Count 1) is timely and sufficiently pled.

Defendants also challenge Plaintiff's TWA claim as: (1) untimely, *see* (Dkt. 16 at ¶¶ 16–21), and (2) insufficiently pled because "Plaintiff did not make her report of alleged violations of law to an 'appropriate law enforcement authority,'" *see* (Dkt. 16 at ¶¶ 22–26).

Plaintiff's TWA claim is timely. Under the TWA, a plaintiff "must sue not later than the 90th day after the date on which the alleged violation of this chapter . . . occurred," *see* TEX. GOV'T CODE § 554.005(1). However, "[t]ime used by the employee in acting under the grievance or appeal procedures is excluded" from that period. *See* (**Id.** at 554.006(c)). Here, the violation, i.e., Plaintiff's termination, occurred on June 24, 2024. *See* (Dkt. 16 at ¶ 30). On August 13, 2024, Plaintiff "initiate[d] action under the grievance or appeal procedures of the employing state or local governmental entity," *see* (**Id.** at ¶ 35), as she must under the law before suing, *see* TEX. GOV'T CODE § 554.006(b).

Under TEX. GOV'T CODE § 554.006(d), "[i]f a final decision is not rendered before the 61st day after the date [the grievance] procedures" were "initiated," "the employee *may* elect to: "(1) exhaust the applicable [grievance] procedures . . . ; or (2) terminate [those] procedures." *See* TEX. GOV'T CODE § 554.006(d). If the employee elects to "exhaust," "the employee must sue not later than the 30th day after the date those procedures are exhausted." *See* (**Id** at § 554.006(d)(1)). If the

employee elects to "terminate," "the employee must sue within the time remaining under Section 554.005." *See* (**Id** at § 554.006(d)(2)).

However, there is no requirement that Plaintiff must make an election on the 61st day. The statutory language is permissive. Plaintiff may elect to exhaust or wait it out. Anytime on or after the 61st day, the employee *may* elect to exhaust or terminate. Electing to remain in the procedure does not oblige the employee to exhaust. If it did, no public employee would make such an election. If the employee did, the public employer could simply refuse to issue a final decision, and the public employee could never sue. To avoid that problem, the statutory text permits the public employee to terminate the procedure, without limitation, "[i]f a final decision is not rendered before the 61st day after the date [the grievance] procedures."

That is, Defendants' proposed "120-day maximum" appears nowhere in the statute or case law and would read out tolling and the election mechanism. Here, the violation occurred on June 24, 2024. *See* (Dkt. 16 at ¶ 30). On August 13, 2024, when Plaintiff initiated the grievance procedure, 50 days had elapsed. *See* (Dkt. 15 at ¶ 35); TEX. GOV'T CODE § 554.006(a)&(b). Because time spent in the grievance process is excluded from the 90-day statute of limitations, *see* TEX. GOV'T CODE § 554.006 (c), 40 days remained, when Plaintiff terminated the procedure on June 16, 2025. *See* (Dkt. 15 at ¶ 37). As Plaintiff filed suit that same day (June 16, 2025), Plaintiff sued 40 days before the end of the limitations period. *See* (Dkt. 1-3.).

Defendant emphasizes the word "acting" and asserts that tolling did not happen because Rappmund was not "acting" but cites no relevant authority for the proposition. Defendants instead rely on a case decided under a very different version of the law, long since amended. *See* (Dkt. 16 at ¶ 19) (citing *Hockaday v. Texas Dep't of Criminal Justice*, 914 F.Supp. 1439, 1444 (S.D. Tex.

Jan. 31, 1996)).[1] That prior version of the law required an employee to invoke the grievance procedures "not later than the 90th day," excluded "[t]ime used by the employee in exhausting the grievance," but did "not apply if a final decision is not rendered before the 31st day after the employee initiated the grievance or appeal." *See* TEX. GOV'T CODE ANN. § 554.006 (Vernon 1994). The current law has no such requirement, *see* TEX. GOV'T CODE ANN. § 554.006 (2025), and no case law under the present version of the TWA reads into that law a 120-day requirement or that the employee must be "acting" under the grievance procedure. Thus, Defendants cannot and do not cite such a case.

Equally, Plaintiff has adequately pled her TWA claim. Plaintiff pleads two independent bases for asserting that she "in good faith report[ed] a violation of law by the employing governmental entity or another public employee *to an appropriate law enforcement authority*." The first basis is that she made her report to Grean Valley's Board of Directors (the "Board") by delivering that report to Board President Jon Frias. *See* (Dkt. 15 at ¶¶ 17, 18). Under Texas Law, a report is sufficient if employee subjectively believed the report was made to a person who is in a position to—or authorized to—receive a report on behalf of the law enforcement authority, and that belief was objectively reasonable. *See Tex. DOT v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002); *Wichita County v. Hart,* 917 S.W.2d 779, 784 (Tex. 1996). It is reasonable to infer that Mr. Frias was in a position to or authorized to receive a report on behalf of the Board. Further, Plaintiff alleged that she made those reports directly to the Board itself. *See* (Dkt. 15 at ¶¶ 16–17).

Thus, the question is whether the Board is an appropriate law enforcement authority. In determining whether a governmental entity qualifies as such, the relevant inquiry is whether the

---

[1] *Hockaday* relies on *Turner v. Richardson Indep. Sch. Dist.*, for the proposition that there is a 120-day maximum limitations period. *See Turner v. Richardson Indep. Sch. Dist.*, 885 S.W.2d 553, 560 (Tex. App. 1994) ("The Turners filed their original petition on April 16, 1992, well beyond the 120-day maximum limitations period. *See* TEX. GOV'T CODE ANN. §§ 554.005-.006 (Vernon 1994).")

Board is authorized to regulate under or enforce the "particular law the public employee reported

violated." *See Needham*, 82 S.W.3d at 319–20. Plaintiff alleged in her report the following acts:

> . . . Plaintiff's report alleged that Pat Allen took District funds (junk/scrap money) of $400 and $500 to pay personal debts/bills and for personal gain, respectively, received a reimbursement of $2,348.16 from District funds but provided no receipts or documentation to support the reimbursement, purchased a diesel tank, with District funds, but later gave the tank to his son-in-law, kept and sold District scrap metal for his personal gain, covered up failed drug tests by District employees, and discriminated against female workers and older workers.

*See* (Dkt. 15 at ¶¶ 17 & 41):

> Plaintiff also informed the Board that Mr. Allen used the District's "company credit card" for personal expenses and cited specific instances, in which Mr. Allen took money from District funds and used it to pay his personal bills, pocketed District funds, gave District property to his son-in-law, and requested and received a reimbursement, without providing receipts or proof that he was entitled to the reimbursement.

Further, Plaintiff pointed to particular laws that the reported conduct violated:

> The Board is responsible for employing or contracting with a person to serve as the District's general manager and may delegate its authority to the general manager. *See* TEX. WATER CODE § 49.056. However, even when the Board delegates its authority to the general manager, it is still responsible for governing the District and for direct regulatory oversight of the general manager's exercise of those delegated powers. Plaintiff appropriately reported to the Board that Pat Allen, the District's then-general manager, was paying personal expenses out of District funds and making improper reimbursements to himself, in violation of the Water Code. *See, e.g.,* Tex. Water Code § 49.155 & .151.

*See* (Dkt. 15 at ¶ 44). Finally, Plaintiff showed that the Board is authorized to regulate under or

enforce those laws:

> The Board is responsible for and has direct regulatory oversight over the violations of law report by Plaintiff to the Board including the District's budget and spending. *See* TEX. WATER CODE § 49.057(b). The Board is further empowered to: (i) make personnel decisions, *see* (**Id.** § 49.057(a)), to (ii) ensure that "an officer or employee, who routinely collects, pays, or handles any funds of the district . . . furnish good and sufficient bond," *see* (**Id.** § 49.057(e)), to (iii) adopt bylaws to govern the affairs of the District, *see* (**Id.** at 49.057(g)), to (iv) purchase "all materials, supplies, equipment, vehicles, and machinery needed by the district to perform its purposes," *see* (**Id.** at (h)), and to (v) obtain or require "an officer or employee of the district to  obtain insurance coverage under an interlocal agreement

that covers theft of district funds by officers or employees of the district in lieu of requiring a bond," *see* (**Id.** at (i)). The Board further has authority to investigate and take regulatory action, on the basis of those violations of law reported by Plaintiff, including leveling penalties, *see* TEX. WATER CODE § 49.004, taking personnel actions against the general manager, *see* (**Id.** at § 49.057(a)), auditing accounts and District funds and adopting policies related to auditing and monitoring the District's finances, *see* (**Id.** at §§ 49.199, .191, & .193), approving and averring to the District's audits or financial reports, *see* (**Id.** at §§ 49.194), and requiring that the general manager furnish a bond or obtain insurance that covers theft by the general manager, *see* (**Id.** at §§ 49.057(e) & (i)).

*See* (Dkt. 15 at ¶ 44).

In short, "Plaintiff believed in good faith that the Board was charged with preventing government waste, misappropriation or misuse of District property or funds, and abuses of authority by Green Valley's General Manager and otherwise authorized to regulate under or enforce the laws alleged to have been violated in the report. And, Plaintiff's belief was objectively reasonable." Therefore, Plaintiff has adequately pled that her report to the Board and to the Board through Board President Jon Frias, were made "to *an appropriate law enforcement authority*."

Plaintiff's second basis for alleging her report was made in good faith "to *an appropriate law enforcement authority*" is that she delivered the Mr. Frias, who

> . . . told her he would provide her report to Guadalupe County District Attorney's office . . . , on her behalf. Further, Plaintiff made the report to Frias at his direction and based on his assertion that he would, on her behalf, provide Plaintiff's report of violations of law to the District Attorney's office . . . .

*See* (Dkt. 15 at ¶ 42). The conduct, which Plaintiff reported, clearly implicated penal code violations policed by the DA's office. Further, Plaintiff made the reports to Frias, who agreed to act as her agent. *Cf Gray v. City of Galveston*, No. 14-12-00183-CV, 2013 Tex. App. LEXIS 6197, at *16 (Tex. App. May 21, 2013) (report made to attorney, who transmitted the report to law enforcement, was a report to an appropriate law enforcement authority). Frias was not her supervisor. The report was not made to a supervisor. Plaintiff did not make the report to him "with the mere knowledge that Frias, the Board, and/or Green Valley had a legal obligation to transmit

10

her report to an appropriate law enforcement authority." She made it in good faith, subjectively believing he was in a position to receive the compliant for the DA.

Further, that belief was objectively reasonable. *See Tex. DOT v. Needham*, 82 S.W.3d at 321; *Wichita County v. Hart,* 917 S.W.2d at 784. Plaintiff pled specific allegations that lead to that conclusion, including that Frias told her he would, "on Plaintiff's behalf, deliver her report . . . to the District Attorney's office, that she was protected as a whistleblower, and that the DA's office had already given the matter a case number." Because Frias had already initiated the case with the DA's office and obtained a case number, it was reasonably objective for her to believe he was running point on the criminal complaints (being reported by her with Green Valley having been stolen from) and that he would deliver her complaints to the DA, for her as an employee of Green Valley, the criminal complainant, which he did. *See* (Dkt. 15 at ¶ 18) ("Mr. Frias directed Plaintiff to provide that information to him, told Plaintiff she would be protected if she made a report to the Board as a whistleblower, and that he would provide her report to law enforcement (for possible criminal prosecution) for her."). Because Plaintiff has plausibly asserted that she made a good faith report to appropriate law enforcement authority, her TWA claim should not be dismissed.

## V.    CONCLUSION AND PRAYER

Therefore, Plaintiff respectfully asks the Court to deny Defendants' Motion to Dismiss to as Plaintiff's individual liability claims against Defendant Gage under the FMLA and Section 1983, including on the basis of qualified immunity; to deny Defendants' Motion to Dismiss Plaintiff's Texas Whistleblower Act claim as that claim is timely and well pled; and to grant dismissal without prejudice and without affecting the same claims against Defendant GVSUD, all claims identified above as either not made or made by error/inadvertence.

Respectfully submitted,

THE GILBREATH LAW FIRM, PLLC

11

By:     _/s/  Jeremy Gilbreath_____
         Jeremy Gilbreath
         State Bar No. 24069783
         jeremy@gilbreathfirm.com
         13000 Old Blanco Rd., Suite 304
         San Antonio, Texas 78216
         TEL NO.: (210) 479-3195
         FAX NO.: (210) 479-8452
         **ATTORNEY FOR PLAINTIFF**
         E-mail: jeremy@gilbreathfirm.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed and served via e-mail and the Court's CM/ECF system on November 11, 2025 at 11:00 a.m. (CST) to the following:

A Boone Almanza
State Bar No. 01579001
balmanza@abdmlaw.com
Tanya Robinson
State Bar No. 24095822
trobinson@abdmlaw.com
ALMANZA, BLACKBURN, DICKIE & MITCHELL, LLP
2301 S. Capital of Texas Highway, Building H
Austin, Texas 78746
512-474-9486; 512-478-7151 (fax)
**ATTORNEYS FOR DEFENDANTS**

         ___/s/ Jeremy Gilbreath_____
         Jeremy Gilbreath
         E-mail: jeremy@gilbreathfirm.com

12