**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TRACY RAPPMUND, | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | Case No.  SA-25-CV-00934-XR |
| | § | |
| GREEN VALLEY SPECIAL UTILITY | § | |
| DISTRICT, PHILLIP GAGE, | § | |
| *Defendants* | § | |

<u>**ORDER ON MOTION TO DISMISS**</u>

On this date, the Court considered Defendants' motion to dismiss (ECF No. 16), Plaintiff's response (ECF No. 19), and Defendants' reply (ECF No. 20). After careful consideration, the Court issues the following order.

**BACKGROUND[1]**

Plaintiff Tracy Rappmund brings this case against her former employer, Defendant Green Valley Special Utility District ("GVSUD" or the "District") and its General Manager ("GM"), Phillip K. Gage. Plaintiff was terminated on June 24, 2024, just weeks after Gage's promotion to GM, and while she was either on or had just returned from approved leave under the Family and Medical Leave Act ("FMLA") following a double mastectomy and related complications.

**I.    Whistleblower Activity**

Plaintiff was hired in 2012 by then-General Manager Pat Allen. ECF No. 15 ¶ 13. On October 31, 2023, Plaintiff submitted a written report to the President of GVSUD's Board of Directors, John Frias, alleging that Allen had, *inter alia*, misappropriated District funds and property, covered up failed drug tests, made discriminatory comments and conduct toward female and older workers, and retaliated against employees who complained about discrimination or filed

---

[1] Unless otherwise noted, these facts are drawn from Plaintiff's Second Amended Complaint (ECF No. 15), the operative pleading, and treated as true for the purpose of evaluating Defendants' motion.

EEOC charges. *Id.* ¶ 17. Frias allegedly told Plaintiff that the Board would take action to investigate her allegations and correct any misconduct and that "he would, on Plaintiff's behalf, deliver her report of violations of law to the [Guadalupe County] District Attorney's office." *Id.* ¶ 18. He also allegedly assured her that "she was protected as a whistleblower" and that "the DA's office had already given the matter a case number." *Id.*

## II.    FMLA Leave

In early 2024, Plaintiff learned that she required a total mastectomy. *Id.* ¶ 19. She requested FMLA leave, which was approved from the date of the surgery—April 16, 2024—to May 28, 2024. *Id.* On May 29, 2024, Plaintiff returned to work after her initial FMLA leave but soon required further medical intervention due to an infection, leading to hospitalization and a second unplanned surgery. *Id.* ¶ 22. Plaintiff informed the District's acting GM, Phillip DeFrancesco, that she had been hospitalized and needed additional, emergency FMLA leave. *Id.* Then, on May 29, 2024, Plaintiff submitted FMLA paperwork for a separate, previously planned surgery scheduled for July 8, 2024, with anticipated incapacity from July 8 to July 26, 2024, and additional follow-up appointments. *Id.* ¶ 23.

Between June 1 and June 4, 2024, Plaintiff's infection worsened, resulting in hospitalization and emergency surgery on June 4th. *Id.* ¶ 22. The day before her surgery, Plaintiff updated DeFrancesco about her hospitalization and inability to return to work and notified him and others about the upcoming surgery. *Id.* At the time, due to her FMLA leave and subsequent hospitalization, Plaintiff was unaware that Defendant Gage had assumed the GM position that same day. *Id.* ¶ 24.

On June 6, 2024, Plaintiff emailed Gage to update him on her medical condition and expected return to work. *Id.* ¶ 26. On June 10, 2024, Plaintiff emailed Gage again, attaching a

doctor's note indicating she could return to work on June 17, 2024, with restrictions. *Id.* ¶ 27. On June 13, 2024, she followed up with Gage, again attaching the Certification of Health Care Provider. *Id.*

On June 14, 2024, Gage emailed Plaintiff, extending her leave of absence with pay through June 21st, with a return-to-work date of June 24th. *Id.* ¶ 28. On June 23, 2024, Gage emailed Plaintiff again, extending her FMLA leave for another week and stating he did not expect to see her the next day. *Id.* ¶ 29. Plaintiff, however, did not receive the message and returned to work as previously scheduled on June 24, 2024. *Id.* ¶ 30.

### III.    Termination – June 24, 2024

Immediately upon her return, Gage terminated Plaintiff's employment with the District. *Id.* Gage prepared a memorandum, not provided to Plaintiff, stating that the termination was based on an external investigation and advice of counsel. *Id.* Plaintiff was not informed of the basis for her termination, was not contacted as part of the investigation, and was not given an opportunity to respond or appeal. *Id.* ¶ 31

Plaintiff was replaced by Financial Controller Jenna Buntin, who was significantly younger and not a complainant or FMLA user, and some duties may have been reassigned to Ashlyn Ford and Katie Durham—both younger and outside protected classes. *Id.* ¶ 53.

### IV.     Procedural History

On August 13, 2024, Plaintiff initiated internal grievance proceedings with the District relating to her termination, asserting whistleblower status and requesting investigation and a decision by the Board. *Id.* ¶ 35.

In December 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights, alleging

3

discrimination based on sex, age, disability, and retaliation for opposing unlawful practices. *Id.* ¶ 38.

The District and Board never responded to Plaintiff's internal grievance. *Id.* ¶ 36. Thus, Plaintiff terminated the internal grievance proceedings on June 16, 2025, *id.* ¶ 37, and filed suit against Gage and GVSUD in state court the same day, *see* ECF No. 1-3. Defendants timely removed the case based on federal question jurisdiction. *See* ECF No. 1.

In October 2025, Plaintiff filed her Second Amended Petition, alleging (1) claims against Gage individually for FMLA interference and retaliation under 42 U.S.C. § 1983, (2) claims against the District for employment discrimination and retaliation under Title VII, the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, and the Texas Commission on Human Rights Act ("TCHRA"), and (3) a claim against the District for violation of the Texas Whistleblower Act ("TWA"). *See* ECF No. 15.

Defendants move to dismiss Plaintiff's FMLA-related claims against Gage for failing to state a claim for individual liability and as barred by qualified immunity.[2] ECF No. 16 at 3–5. They further assert that Plaintiff's TWA claims against the District are untimely and that her report of Allen's misconduct to the District Board President was not protected under the statute because it did not constitute a good faith report to an "appropriate law enforcement authority." *Id.* at 6–10.

---

[2] To the extent that Defendants' motion seeks dismissal of any other claims against Gage in his individual capacity, Plaintiff has confirmed that her "only individual capacity claims against Gage were under Counts 2 and 3 under the FMLA and Section 1983." ECF No. 19 at 2. Plaintiff has further acknowledged that any claims against Gage in his official capacity were pled in error and duplicative of her claims against the District. *See id.*

4

**DISCUSSION**

**I.      Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II.       Analysis

### A.       FMLA Claims against Gage

Employers subject to the FMLA are prohibited from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Bell v. Dallas County*, 432 F. App'x 330, 334 (5th Cir. 2011) (quoting 29 C.F.R. § 825.220(b)). The FMLA also prohibits employers from discharging, retaliating, "or in any other manner discriminat[ing] against any individual for opposing" an employer's unlawful FMLA practices. 29 U.S.C. § 2615(a)(2). Upon the employee's timely return, the employer must reinstate the employee "to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions." *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 345 (5th Cir. 2013) (quoting *Smith v. E. Baton Rouge Par. Sch. Bd.*, 453 F.3d 650, 651 (5th Cir. 2006)).

To state an FMLA interference claim, a plaintiff must allege: (1) she was an eligible employee; (2) her employer was subject to the FMLA; (3) she was entitled to leave; (4) she gave proper notice; and (5) her employer denied the benefits to which she was entitled. *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021). For an FMLA retaliation claim, a plaintiff must allege: (1) she is protected under the FMLA; (2) she suffered an adverse employment decision; and (3) the adverse decision was made because of her request for leave. *Id.* at 305.

Defendants do not dispute that Plaintiff has adequately alleged the elements of both her interference and retaliation claims. *See generally* ECF No. 16. Instead, they assert that Gage is not subject to individual liability for FMLA violations and is otherwise entitled to qualified immunity under 42 U.S.C. § 1983.

As to individual liability, Gage acknowledges that public employees can be subject to individual liability under the FMLA but, without citing any authority, insists that Plaintiff has failed to state a claim because she "alleges that Gage was acting within his authority properly delegated to him by GVSUD and does not allege any *ultra vires* acts." ECF No. 16 at 4. But the Fifth Circuit has held that a public employee who "acts, *directly or indirectly*, in the interest of an employer" meets the FMLA's definition of employer and may be individually liable. *See Modica v. Taylor*, 465 F.3d 174, 186–88 (5th Cir. 2006) (emphasis added). Nothing in *Modica* limits individual liability to *ultra vires* acts.

"The doctrine of qualified immunity protects government officials from liability for civil damages [only] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations and quotations omitted). Plaintiff has alleged facts that, if proven, would render Gage's conduct objectively unreasonable: terminating an employee on the day she returned from approved FMLA leave, while knowing the extent of her medical condition and the protected nature of the leave. ECF No. 19 at 5–7; *see Bellow v. LeBlanc*, 550 F. App'x 181, 184 (5th Cir. 2013) ("[I]n the light of the FMLA's and *Modica*'s plain language, Bellow has the statutory right to take medical leave. By alleging LeBlanc terminated her in retaliation for properly exercising that statutory right, Bellow satisfies the first qualified-immunity prong."). Defendants' reply argues Gage's conduct was objectively reasonable because the termination was "warranted, for wholly non-discriminatory reasons," ECF No. 20 at 2, but this factual contention is unsuitable for resolution on a motion to dismiss.

Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 claims for FMLA violations is **DENIED**.

### B.    Whistleblower Claims

#### 1.    Timeliness

The District asserts that Rappmund's whistleblower claims are untimely under the TWA, which requires a plaintiff to file suit no later than the 90th day after the date of the alleged violation, *excluding time spent acting under the employer's internal grievance or appeal procedure*. ECF No. 16 at 6–8 (citing Tex. Gov't Code §§ 554.005–.006). ECF No. 16 at 6–8.

The parties disagree about how to measure the time Plaintiff spent in GVSUD's grievance procedures. Plaintiff initiated internal grievance procedures 50 days after her termination, on August 13, 2024. *See id.* ¶¶ 10, 35. After the District and the Board failed to respond to Rappmund's internal complaint for 307 days, she terminated the grievance procedures on June 16, 2025. *See id.* ¶ 37.

Under the TWA, a public employee must initiate her employer's grievance or appeal procedures relating to employee discipline. Tex. Gov't Code § 554.006(a). The employee need not *exhaust* the internal procedure, however, if is not completed within 61 days. *See id.* § 554.006(d). Thereafter, "the employee may elect to":

> (1)    exhaust the applicable procedures . . ., in which event the employee must sue not later than the 30th day after the date those procedures are exhausted to obtain relief under this chapter; or

> (2)     terminate procedures . . ., in which event the employee must sue within the time remaining under Section 554.005 to obtain relief under this chapter.

*Id.*

Plaintiff asserts that her TWA claim was timely because, when she terminated the grievance procedures under Section 554.006(d)(2) on June 16, 2025, 40 days remained on the 90-day clock for filing suit. *See* ECF No. 19 at 9. The District, on the other hand, insists that Plaintiff was required to make such an election on the 61st day after initiating the grievance procedures—on

October 13, 2024—and file suit within 40 days after that election—on November 22, 2024. *See* ECF No. 16 at 6–7.

The central dispute is whether section 554.006(d) permits Plaintiff to hold the grievance procedure "open" indefinitely until it is convenient for her to sue, or whether the statute required her to act by the 61st day after initiating procedures. The statute does not contain the express outer limit proposed by Defendants. Nor have Defendants identified any post-amendment authority adopting such a limit.[3]

### 2.      Report to "Appropriate Law Enforcement Authority"

Ultimately, even assuming the complaint is timely, the Court agrees with Defendants that Plaintiff's report to the District Board President was not protected under the statute because it did not constitute a good faith report to an "appropriate law enforcement authority."

An appropriate law enforcement authority is a governmental entity authorized to "regulate under or enforce the law alleged to be violated in the report." Tex. Gov't Code § 554.002(b)(1). Alternatively, an appropriate law enforcement authority is a governmental entity authorized to "investigate or prosecute a violation of a criminal law." Tex. Gov't Code § 554.002(b)(2).

Plaintiff proffers two theories under which her report to Frias qualified for protection under the TWA, arguing that (1) the District itself is a law enforcement authority, and (2) that she relied in good faith on Frias to act as her agent to report Allen's alleged misconduct to the DA. *See* ECF No. 15 at 14–16; ECF No. 19 at 10–13.

---

[3] The two cases cited in Defendant's motion—*Hockaday v. Tex. Dep't of Crim. Just.*, 914 F. Supp. 1439, 1444 (S.D. Tex. 1996) and *White v. Phillips*, 703 S.W.3d 823 (Tex. App.—Austin 2024, pet. denied)—are inapposite. *Hockaday* construed an earlier version of the statute that expressly imposed a 31-day outer limit, which the Legislature removed in subsequent amendments. And *White* addressed when the 90-day period *began* to run—it does not resolve the question of how long a plaintiff may remain in grievance procedures before triggering the obligation to sue.

Plaintiff's first theory—that the board president of her utility district employer qualifies as an appropriate law enforcement authority—fails under controlling Texas Supreme Court precedent. *See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680 (2013). For an entity to constitute an appropriate law enforcement authority, it must have authority to enforce, investigate, or prosecute violations of law against third parties *outside of the entity itself*, or authority to promulgate regulations governing the conduct of such third parties. *Id.* at 686. Moreover, "[t]he Whistleblower Act speaks to an authority statutorily empowered to regulate under or enforce the actual law allegedly violated—the particular law the public employee reported violated is critical to the determination—or to investigate or prosecute a criminal violation." *Id.* at 685–86 (quotations and citation omitted).

Plaintiff asserts that the District is a proper law enforcement authority based on its statutory authority to oversee and audit its own budget and spending, make personnel decisions, require officers and employees who handle District funds to furnish bond and/or obtain insurance, and level civil penalties. *See* ECF No. 19 at 11 (citing Tex. Water Code § 49.004, .056, .057, .151, .155, .191, .193, .194, .199). But the functions and statutory provisions she cites bear on the District's *internal* operations, not any *outward-looking* authority to enforce legal violations involving misappropriation of District funds and property or employment discrimination against *third parties*.[4] Authority to enforce legal requirements or regulate conduct within the entity itself is insufficient. *Gentilello*, 398 S.W.3d at 686 (the Act protects those who report to authorities that issue legal directives, not authorities that follow them."); *see also Tex. DOT v. Needham*, 82 S.W.3d

---

[4] That the District may have outward-looking regulatory and enforcement authority over particular *Water Code* violations by third parties does not render it an "appropriate" law enforcement authority for reporting alleged violations of law addressed in Plaintiff's report to Frias—i.e., that Allen misappropriated District funds and property, covered up failed drug tests, made discriminatory comments and conduct toward female and older workers, and retaliated against employees who complained about discrimination or filed EEOC charges. ECF No. 15 ¶ 17.

314, 321 (Tex. 2002) (concluding that a Texas Department of Transportation ("TxDOT") employee's report to her supervisor about a co-worker did not qualify for protection under the TWA because "TxDOT has no authority to regulate under or enforce the Texas's driving while intoxicated laws."); *Tex. Comm'n on Env. Quality v. Resendez*, 450 S.W.3d 520 (2014) (rejecting argument that a supervisor's authority to regulate activities within a division and enforce internal policy constituted outward-looking law enforcement authority).

Plaintiff's good faith belief to the contrary does not save her claims.[5] *See Needham*, 82 S.W.3d at 321. Because "the statutory definition's limiting language—regulate under, enforce, investigate, and prosecute—does not include an employer's power to internally discipline its own employees for an alleged violation," a plaintiff cannot rely on the employer's internal disciplinary or enforcement procedures as evidence that she subjectively or objectively believed the employer constituted an appropriate law enforcement authority. *See id.*

Plaintiff's second theory—that she satisfied the reporting requirement by relying on Frias as her agent based on his representation that he would submit her allegations to the DA—is novel but, in the Court's view, equally unavailing. No Texas Supreme Court decision has expressly recognized an agency or proxy theory as a substitute for a direct report to an appropriate law enforcement authority under the Act. Indeed, by its text, the TWA protects a "public employee" who "*reports*" a violation of law "*to* an appropriate law enforcement authority." Tex. Gov't Code § 554.002(a). Thus, the statute does not include passive language that might embrace an agency or proxy theory of reporting that would protect, e.g., a public employee who "caused a report to be made" to an appropriate authority. *Tex. Health & Hum. Servs. Comm'n v. Pope*, 674 S.W.3d 273,

---

[5] While plaintiffs are generally permitted to plead in the alternative, Plaintiff's reliance on Frias to report the violations to the DA suggests that she did not subjectively believe the District was an appropriate law enforcement authority, at least as to her allegations of criminal conduct.

282 (Tex. 2023) ("[T]he 'report must be direct' in the sense that it must be made 'directly' to an 'appropriate law enforcement authority.'") (quoting *Resendez*, 450 S.W.3d at 520). That the statutory language does not extend to intermediaries is unsurprising. As the Texas Supreme Court has explained, "[f]ederal and other state whistleblower laws explicitly protect purely internal reports to supervisors; Texas law does not." *Gentilello*, 398 S.W.3d at 686–87. Thus, while Frias's alleged report to the DA would protect Frias; it would *not* protect Rappmund.[6]

Accordingly, Plaintiff has failed to state a claim for violation of the TWA.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 16) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims under the Texas Whistleblower Act are **DISMISSED WITH PREJUDICE**. All other claims remain pending.

It is so **ORDERED**.

**SIGNED** this 30th day of June, 2026.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff objects that her report to Frias qualifies because he was not a supervisor but, as Board president, a mandated reporter. ECF No. 19 at 12. In support of this theory, she cites *Gray v. City of Galveston* for the proposition that "a report made to attorney, who transmitted the report to law enforcement, was a report to an appropriate law enforcement authority." ECF No. 19 at 12 (citing No. 14-12-00183-CV, 2013 WL 2247386 (Tex. App.—Houston [14th Dist.] May 21, 2013, no pet.)). But there, an employee of the Galveston Police Department reported "official oppression" by the Chief of Police to the Galveston County District Attorney, who was "an appropriate law enforcement authority." *Id.* at *2.

12